| | | |
|---|---|---|
| TREVOR MOHAMMED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| KENNETH BEAVER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Amended Complaint, (Doc. No. 15), and on Defendants' Motions for Extension of Time to Answer, (Doc. Nos. 16, 18). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 5).

## I.    BACKGROUND

*Pro se* Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred at the Alexander Correctional Institution where he still resides. The original Complaint passed initial review on claims of unlawful conditions of confinement against Defendants Beaver and Townsend and on claims of retaliation against Defendants Fox, Harris, and Snuffer. See (Doc. Nos. 1, 7).

In the Amended Complaint, Plaintiff names the following Defendants: Alexander C.I. Administrator Kenneth **Beaver**, Unit Manager Rondal **Townsend**, Medical Supervisor Pamela **Chapman**, Chronic Care Nurse Renee **Harris**, Nursing Supervisor C. **Fox**, Sergeant **Goins**, Correctional Officer Brent **Snuffer**, NCDPS Medical Director Dora **Plummer**, NCDPS Director of Prisons Kenneth **Lassiter**, and NCDPS Secretary Erik **Hooks**.

Liberally construing the Amended Complaint and accepting the allegations as true,

1

Plaintiff had surgery at Duke Regional Hospital on February 13, 2018, to repair vertebrae in his neck. According to the surgeon, it takes at least six months for the titanium brace, screws, and bone graph to become attached. Plaintiff returned to Alexander C.I. on March 29, 2018.

Plaintiff's neck brace was confiscated less than 24 hours after returning to Alexander C.I. Defendant Goins persuaded a nurse to take the brace by falsely stating it had been discontinued by the resident physician in retaliation for Plaintiff's complaint that Goins had mistreated another inmate. Defendant Goins also instructed Defendant Snuffer to confiscate Plaintiff's religious headgear, and he has repeatedly harassed Plaintiff. Plaintiff addressed this issue to Defendants Townsend, Beaver, Lassiter, Hooks and Plummer but they provided no relief.

After several complaints of severe neck pain, Plaintiff was given an x-ray which showed that the hardware in his neck is loose. Obstacles were placed in Plaintiff's way that were implemented to prevent him from going to see the surgeon despite his persistent requests. When he went to see his doctor, he was restrained painfully with a black box and waist chain with his arms stacked which caused great discomfort, prevented him from using an inhaler and urinal, and caused pain in his shoulder and neck. This continued even after the doctor wrote an order to preclude such restraints. Defendants Fox and Chapman were aware of that order which was written on May 29, 2018 and failed to take any action in retaliation for making complaints about his medical care. Plaintiff sought relief from Beaver to no avail.

To date, treatment has not been provided for this serious medical need and Plaintiff is suffering unnecessary pain even though Defendants Fox and Chapman are fully aware of the severity of his medical needs. Plaintiff informed supervisory staff Defendants Beaver, Hooks, Lassiter, and Plummer of his serious medical needs but they did not provide any assistance.

Defendants Townsend and Beaver refused to honor a medical order for a handicap cell

when Plaintiff returned from surgery in retaliation for Plaintiff's complaints of staff misconduct. Plaintiff was placed in a small non-handicap cell that had no outlet to plug in his breathing machine and lacking adequate space to turn around his wheelchair. He was unable to maneuver in the cell well and fell on two occasions, hurting his wrist. He was also denied an orderly which he had been previously assigned in retaliation for his complaints. Officer Snuffer also retaliated against Plaintiff for making complaints against him and his co-workers. Plaintiff was subjected to unreasonable searches by Snuffer that served no institutional interest, were malicious and harassing, and lacked any prison needs or penological justification. Defendant Snuffer vandalized Plaintiff's cell, confiscated his personal property, and placed Plaintiff's Quran in the toilet and on the floor. Plaintiff raised this issue with Defendants Townsend and Beaver but they did not stop Snuffer's searches.

On December 21, 2017, Plaintiff was summoned to the treatment room and was kept there for an extended time while Nurse Harris had two officers search Plaintiff's assigned cell, and pens were confiscated. Plaintiff believes this was in retaliation for Plaintiff having addressed their failure to provide overhead headphones even though Plaintiff had valid orders.

Information about Plaintiff's medical duty status was erased and changed to be untrue. After Plaintiff complained in a grievance on May 9, 2018, more changes were made. Plaintiff believes the changes were made by Defendants Harris and Fox in retaliation for writing grievances about his medical complaints. Two days later, on May 11, Plaintiff's cell was vandalized and property was confiscated. Plaintiff addressed this issue to Defendants Beaver, Hooks, and Plummer but they failed to provide any assistance.

Plaintiff has reconstructive surgery on his left shoulder and back but the surgery was unsuccessful due to a dead nerve on the left side of his neck, which has caused limited use of the

left arm. An MRI revealed a tear in the shoulder and steroid injections were not helpful. On December 15, 2017, Plaintiff saw and orthopedic doctor but he wanted to wait until after neck surgery to determine the best course of treatment. Plaintiff was not taken for the follow-up visit with the orthopedic doctor even though medical provider James Johnson put in for a follow-up on May 29, 2018. Defendants Chapman and Fox are responsible for scheduling such appointments and they failed to do so even though they are fully aware of the need for treatment and it is obvious. This is causing continuous pain and suffering which is sometimes severe.

Plaintiff suffers from severe migraine headaches from a head injury. He gets partial treatment with injections at the ECU. A medication was also prescribed for the headaches but he has not received a single dose of it even though the prescription has been valid for a year. Another medication was prescribed for nausea caused by the headaches but it has not been issued since he returned from surgery on March 29, 2018. Defendants Chapman and Fox failed to ensure that the prescribed medication is administered. Defendants Chapman, Fox, Beaver, and Townsend are aware that Plaintiff is forced to stay in full restraints for about 12 hours when he is transported for the migraine injections yet failed to provide any relief such as transferring Plaintiff closer to ECU.

Plaintiff is forced to endure unnecessary pain and suffering due to the deliberate deprivation of adequate medical care. Defendants Chapman, Fox, Beaver, Plummer, and Hooks knew of this deprivation but failed to take steps to provide relief.

Plaintiff has been denied equal protection insofar as he has a valid order for over-head headphones to accommodate his hearing aids. Defendants Fox, Harris and Chapman have denied them which prevents him from enjoying television like other inmates. He also claims equal protection violations for denial of a handicap cell, equipment like wheelchair and cane, and an orderly.

Plaintiff complains that he has been denied access to mail in that mail is held for between four and six days, including legal mail. Plaintiff repeatedly sought relief from Defendant Beaver to no avail.

Whenever Plaintiff leaves Alexander C.I. for appointments all his personal items are taken in the receiving department including his religious headgear and prison ID card. This happened when Plaintiff went to Central Prison for six weeks in early 2018. Plaintiff requested his property several times but Alexander staff failed to bring it to him at Central Prison even though transportation staff goes to Central Prison daily. Plaintiff claims that the confiscation of his religious headgear denies him the free practice of his faith and also makes him cold because he is bald. He claims that Defendant Beaver is responsible.

Plaintiff seeks injunctive relief, compensatory and punitive damages, replacement of personal property, and any other relief that is adequate, just and proper.

## II.      STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him

to relief.'" <u>Veney v. Wyche</u>, 293 F.3d 726, 730 (4th Cir. 2002) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>see</u> <u>also</u> <u>Smith v. Smith</u>, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 570 (2007); <u>see</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) (the <u>Twombly</u> plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. <u>Id.</u>

### III.    DISCUSSION

**(1)    <u>Cruel and Unusual Punishment</u>**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it

permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). To establish the imposition of cruel and unusual punishment, a prisoner must prove two elements: (1) "the deprivation of [a] basic human need was objectively sufficiently serious," and (2) "subjectively the officials act[ed] with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quotation omitted).

**(a)**     **Medical Deliberate Indifference**

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Plaintiff alleges that he has medical conditions including shoulder injury, severe migraines, and neck surgery. Plaintiff alleges that Defendants Beaver, Chapman, Fox, Harris, and Townsend failed to provide Plaintiff with a handicap cell and orderly upon his return from neck surgery pursuant to a doctor's order. Plaintiff complains that Defendant Goins initiated confiscation of the neck brace that Plaintiff's doctor provided following neck surgery. Defendants Chapman and Fox were aware that Plaintiff was being transported for follow-up neck appointments while restrained in a painful manner in violation of a doctor's order. Defendants Chapman and Fox failed to schedule orthopedic follow-up appointment for Plaintiff's shoulder and back while fully aware of the need for the appointment, causing continuous pain that is sometimes severe, and failed to ensure that Plaintiff received his prescribed medication for migraine headaches. Defendants Chapman and Fox were also aware that Plaintiff was forced to stay in full restraints for about 12 hours when he is transported for the migraine injections and failed to provide any relief such as transferring Plaintiff closer to ECU. He further alleges that Defendants Beaver, Chapman, Fox, and Townsend knew that Plaintiff was fully restrained for about 12 hours each time he was transported to ECU for migraine injections and failed to provide him with any relief such as transfer to a closer facility.[1] Plaintiff alleges that he informed Defendants Beaver, Hooks, Lassiter, Plummer, and Townsend of the foregoing but they failed to provide him with any relief.

Plaintiff's deliberate indifference claims are not clearly frivolous so they will be permitted to proceed against Defendants **Beaver**, **Chapman, Fox, Goins, Harris, Hooks, Lassiter,**

---

[1] Plaintiff does not appear to allege that the failure to transfer him was a due process violation. See generally Sandin v. Conner, 515 U.S. 472 (1995) (a change in the conditions of a prisoner's confinement that does not exceed the scope of the original sentence only gives rise to a federally protected liberty interest if it imposes atypical and significant hardship in relation to the ordinary incidents of prison life); Olim v. Wakinekona, 461 U.S. 238, 245 (1982) (an inmate generally has "no justifiable expectation that he will be incarcerated in any particular prison within a State….").

**Plummer,** and **Townsend.**

    **(b)**     **Conditions of Confinement**

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298 (citing Rhodes, 452 U.S. at 347).

Plaintiff alleges that his prison ID card and approved religious headgear are always confiscated before medical trips. Whenever Plaintiff leaves Alexander C.I. for appointments all his personal items are taken in the receiving department including his religious headgear and prison ID card, this happened when Plaintiff went to Central Prison for six weeks in early 2018. Plaintiff requested his property several times but Alexander staff failed to bring it to him at Central Prison even though transportation staff goes to Central Prison daily, the confiscation of his religious headgear denies him the free practice of his faith and also makes him cold because he is bald, for which Beaver is responsible. Plaintiff also alleges that Chapman, Fox, Harris, Beaver and Townsend refused to honor a medical order for a handicap cell and the assistance of an orderly when he returned from surgery. He was housed in a small non- handicap accessible cell that had no outlet to plug in his breathing machine and lacking adequate space to turn around his wheelchair. As a result he had to back up his wheelchair, which took several attempts because Plaintiff could not turn his head. He fell on two occasions while getting up from the toilet which hurt his wrist. Defendants Beaver, Chapman, Fox, and Townsend aware that Plaintiff is forced to

stay in full restraints for about 12 hours when he is transported for migraine injections, and they failed to provide any relief such as transferring Plaintiff closer to the treatment facility.

Plaintiff's claims about unconstitutional conditions of confinement are not clearly frivolous and will be permitted to proceed against Defendants **Beaver**, **Chapman**, **Fox, Harris,** and **Townsend.**

### (3)    ADA

Under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. See Constantine v. George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005); Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131(2). A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. Rather, the public entity is obligated to make those modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." Miller v. Hinton, 288 Fed. Appx. 901, 902 (4th Cir. 2008) (quoting Bircoll v. Miami-Dade County, 480 F.3d 1072, 1082 (11th Cir. 2007)).

Plaintiff claims that he is ADA-assigned yet Defendants refused to carry out prescribed orders for handicap cell, orderly assistance, restrains, overhead headphones, deceptively changed provider's orders, deliberately failed to process submitted sick call requests, failed to provide headphones, failed to reschedule an appointment for treatment, and confiscated his neck braces.

The gist of Plaintiff's allegations is that Defendants failed to attend to his medical needs.

However, Plaintiff fails to allege that any of the foregoing was done due to discrimination based on his alleged disability. He has, therefore, failed to state a claim under the ADA. See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (holding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners…."); Rashad v. Doughty, 4 Fed. Appx. 558, 560 (10th Cir. 2001) (stating that "[t]he failure to provide medical treatment to a disabled prisoner, while raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."). Therefore, to the extent that Plaintiff attempted to allege ADA claims, they will be dismissed.

**(4)    Equal Protection**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993). The Fourth Circuit does

not recognize prisoners as "a suspect class." <u>Roller v. Gunn</u>, 107 F.3d 227, 233 (4th Cir. 1997). When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. <u>See</u> <u>Morrison</u>, 239 F.3d at 654–55. In a prison context, therefore, the court must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." <u>Shaw v. Murphy</u>, 532 U.S. 223, 225 (2001). This deferential standard applies "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny;" however, this more deferential review does not ignore the concerns that justify application of a heightened standard outside of the prison context. <u>Morrison</u>, 239 F.3d at 655-56.

Plaintiff appears to allege that Defendants violated equal protection by refusing to carry out doctors' orders for a handicap cell, orderly assistance, restrains, overhead headphones, deceptively changing his provider's orders, deliberately failing to process sick call requests, confiscating his neck braces, and refusing to reschedule an appointment for treatment.

Plaintiff conclusively states that Defendants violated equal protection, however, he does not explain how any similarly situated prisoners are treated differently or how the allegedly unequal treatment was the result of intentional or purposeful discrimination. Therefore, Plaintiff's equal protection claim is insufficient to proceed and will be dismissed.

**(5)**     <u>**Search and Seizure**</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. Amend. IV. The applicability of the Fourth Amendment turns on whether "the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." <u>Hudson v. Palmer</u>, 468 U.S. 517, 525 (1984) (quoting <u>Smith v. Md.</u>, 442 U.S. 735, 740

(1979)). While "imprisonment carries with it the circumscription or loss of many significant rights," the Supreme Court nevertheless cautioned that "prisons are not beyond the reach of the Constitution." Id. at 523–24. However, society does not "recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and …, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson, 468 U.S. at 525.

To the extent that Plaintiff alleges he had a right to privacy in his cell or that prison officials somehow violated the Fourth Amendment by conducting cell searches, he has failed to state a § 1983 claim.

**(6)  Mail**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell, 441 U.S. at 547 (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

As a general rule, prisoners have a constitutionally protected interest in their incoming and outgoing mail correspondence. Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir. 2005) (citing Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999) (citations omitted)). Persons outside of prison

also have an interest in corresponding with prison inmates. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989). Prison officials may, however, impose restrictions on prisoner correspondence if those restrictions are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). When evaluating the constitutionality of prison regulations, courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547 (citations omitted).

Plaintiff alleges that he has been denied access to mail in that mail is held for between four and six days, including legal mail. He conclusively states that he complained that he was being denied access to the mail and that he sought relief from Beaver to no avail. Plaintiff's vague and conclusory allegations are too insufficient to adequately allege that Defendants were involved in the disruption to his mail in either their personal or supervisory capacities. Therefore, Plaintiff's claims with regards to the mail will be dismissed.

**(7)** **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff alleges that Defendant Harris kept him in the treatment room for an extended time while two officers searched his cell, and that Defendant Snuffer repeatedly searched and vandalized his cell and confiscated personal property without any penological justification. It appears that the alleged loss of Plaintiff's property was random and unauthorized rather than the result of an established state procedure. Adequate post-deprivation remedies exist for Plaintiff's alleged property loss, so there is no legal theory which would support this claim. See, e.g., Smith v. Ledford, 2006 WL 1431666 at *2 (W.D.N.C. May 22, 2006), *aff'd,* 203 Fed. Appx. 484 (4th Cir. 2006) (dismissing plaintiff's claim that jail administrator confiscated his personal property upon his departure from the jail and refused to return it, because plaintiff had an adequate post-

deprivation remedy for conversion). Therefore, this claim will be dismissed.

**(8)** 		**Retaliation**

Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1987). To succeed on such a claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. See American Civil Liberties Union of Md., Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Board of Governors of Univ. of North Carolina, 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995); accord Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); McDonald v. Hall, 610 F.2d 16, 18–19 (1st Cir.1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams, 40 F.3d at 74.

Plaintiff alleges that Defendant Goins initiated confiscation of Plaintiff's neck brace upon Plaintiff's return to Alexander C.I. following surgery, and instructed Defendant Snuffer to confiscate Plaintiff's religious headgear in retaliation for having made a complaint about Goins' beating of a mentally challenged inmate. He claims that Defendants Beaver and Townsend refused to honor a medical order for a handicap cell when Plaintiff returned from surgery in retaliation for

Plaintiff's complaints of staff misconduct. He alleges that Defendants Chapman and Fox were aware of a doctor's order not to transport Plaintiff while restrained but failed to take action, and that he sought relief from Beaver to no avail. Plaintiff alleges that Defendant Snuffer retaliated against Plaintiff for making complaints against him and his co-workers, subjected Plaintiff to unreasonable searches by Snuffer without any penological justification, and vandalized Plaintiff's cell, confiscated his personal property, and placed Plaintiff's Quran in the toilet and on the floor. Plaintiff informed Defendants Beaver and Townsend of Defendant Snuffer's actions but failed to stop them. Plaintiff claims that Defendant Harris kept him in a treatment room for an extended period while she had two officers search Plaintiff's cell and confiscated property in retaliation for having complained that they did not provide overhead headphones pursuant to Plaintiff's valid order. He claims that Defendants Harris and Fox erased and altered Plaintiff's medical duty status in retaliation for him writing grievances about medical complaints. Plaintiff informed Defendants Beaver, Hooks, and Plummer about the retaliation but they failed to act.

Plaintiff's allegations of retaliation are not clearly frivolous and therefore, these claims will be permitted to proceed against Defendants **Beaver, Chapman, Goins, Fox, Harris, Plummer**, **Snuffer**, and **Townsend** and the remaining retaliation claims will be dismissed.

**(9)**     <u>**Religious Freedom**</u>

The First Amendment of the Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. <u>See Everson v. Bd. of Educ.</u>, 330 U.S. 1, 15 (1947). For government conduct to survive scrutiny under the Establishment Clause, "(1) it must have a secular purpose; (2) its principal or primary effect

must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." Buxton v. Kurtinitis, 862 F.3d 423, 432 (4th Cir. 2017) (citing Lemon v. Kurtzman, 403 U.S. 602, 612–13 (1971)); see also Madison v. Riter, 355 F.3d 310, 316 (4th Cir. 2003). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90.

RLUIPA provides, in part that no government shall impose a "substantial burden" on the religious exercise of a person residing in or confined to an institution, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their

religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). A plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted). Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 199 n.8.

Plaintiff alleges that he practices Islam. Whenever Plaintiff leaves Alexander C.I., all his personal property is confiscated including his religious headgear which denies him the opportunity to freely practice his faith. Plaintiff blames Defendant Beaver for this deprivation. He also alleges that Defendant Snuffer put his Quran on the floor under the toilet during a cell search, and that Defendants Beaver, Hooks, and Plummer failed to assist him.

Plaintiff's religious claims are too vague and conclusory to proceed insofar as he fails to explain how the Defendants' alleged actions substantially burdened his religion. The incidents with Goins and Snuffer have passed initial review for retaliation and Plaintiff has failed to

adequately allege that their actions substantially burdened his religious freedom that would support a separate claim for the violation of religious freedom. With regards to transportation outside of Alexander C.I., Plaintiff's main complaint appears to be that he is cold without his religious headgear, and not that it substantially burdened his religious exercise. Accordingly, Plaintiff's freedom of religion claims will be dismissed.

### IV.    PENDING MOTIONS

Defendants Beaver, Fox, Harris, Snuffer, and Townsend have filed Motions seeking to extend the time to file an Answer, (Doc. No. 16, 18). The initial Motion will be dismissed as moot and the Second Motion will be granted until June 3, 2019.

### V.    CONCLUSION

For the reasons stated herein, the Amended Complaint is sufficient to proceed against Defendants **Beaver**, **Chapman, Fox, Goins, Harris, Hooks, Lassiter, Plummer,** and **Townsend** for deliberate indifference to a serious medical need; against Defendants **Beaver**, **Chapman**, **Fox, Harris,** and **Townsend** for unconstitutional conditions of confinement; and against Defendants **Beaver, Chapman, Goins, Fox, Harris, Plummer, Snuffer, and** Townsend for retaliation. The remaining claims are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Defendants' initial Motion for an Extension of Time to Answer is denied as moot and the Second Motion for an Extension of Time is granted until June 3, 2019. The Clerk of Court will be instructed to commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants

**IT IS THEREFORE ORDERED** that:

1. The Amended Complaint, (Doc. No. 15), passes initial review against Defendants

**Beaver**, **Chapman, Fox, Goins, Harris, Hooks, Lassiter, Plummer,** and **Townsend** for deliberate indifference to a serious medical need; against Defendants **Beaver**, **Chapman**, **Fox, Harris,** and **Townsend** for unconstitutional conditions of confinement; and against Defendants **Beaver, Chapman, Goins, Fox, Harris, Plummer, Snuffer, and** Townsend for retaliation survive initial review under 28 U.S.C. § 1915.

2. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3. Defendants' Motion for an Extension of Time to Answer, (Doc. No. 16), is **DENIED** as moot.

4. Defendants' Second Motion for an Extension of Time to Answer, (Doc. No. 18), is **GRA NTED** until June 3, 2019.

5. **IT IS FURTHER ORDERED THAT** the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Chapman, Goins, Hooks, Lassiter,** and **Plummer,** who are current or former employees of NC DPS.

Signed: May 3, 2019

Frank D. Whitney
Chief United States District Judge